IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SAWSTOP HOLDING LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:19-cv-1198 (LMB/MSN) |
| ) | |
| ANDREI IANCU, Undersecretary of ) | |
| Commerce for Intellectual Property and Director ) | |
| of United States Patent and Trademark Office, ) | |
| ) | |
| Defendant. | |

MEMORANDUM OPINION

Before the Court are plaintiff Sawstop Holding LLC's ("plaintiff" or "Sawstop") Motion for Summary Judgment to Correct the Patent Term Adjustment for U.S. Patent 9,522,476 [Dkt. No. 16] and defendant Director Andrei Iancu's ("defendant") Motion for Summary Judgment [Dkt. No. 19]. The motions have been fully briefed, and finding that oral argument will not further the decisional process, the motions will be resolved on the papers submitted. For the reasons that follow, plaintiff's motion will be denied, and defendant's motion will be granted.

I. BACKGROUND

A. **Statutory & Regulatory Framework**

Before 1999, the term of a patent was 17 years, and it began to run from the date the patent issued. In part to speed up the process for patent review, the American Inventors Protection Act ("AIPA") changed the term of a patent to 20 years, but started that time from the date the first application for the patent was filed. 35 U.S.C. § 154(a)(2). As a result of this change, delays in the United States Patent and Trademark Office's ("USPTO") review of an application could reduce the term of the patent which ultimately issued. To address that problem, the AIPA provides for adjustment of the patent term for "any undue delays in patent examination

caused by the PTO." Pfizer, Inc. v. Lee, 811 F.3d 466, 468 (Fed. Cir. 2016); 35 U.S.C. § 154(b)(1). Three kinds of delay by the USPTO will result in such adjustment. The first two—involving the USPTO's failure to respond within required deadlines to various application actions, and, with some exceptions, a delay of more than three years in issuing a patent—are not implicated in this litigation. See id. at § 154(b)(1)(A)-(B). The third, found in § 154(b)(1)(C), grants adjustments based on the time an application is pending due to derivative proceedings, secrecy orders, or appeals. As relevant to this action, the AIPA provides:

> "if the issue of an original patent is delayed due to … (iii) appellate review by the Patent Trial and Appeal Board or by a Federal court in a case in which the patent was issued under a decision in the review reversing an adverse determination of patentability, the term of the patent shall be extended 1 day for each day of the pendency of the proceeding, order, or review, as the case may be."

The USPTO regulation interpreting this statute explains that a patent term adjustment under § 154(b)(1)(C)(iii) is equal to "the number of days, if any, in the period beginning on the date on which jurisdiction over the application passes to the Patent Trial and Appeal Board … and ending on the date of a final decision in favor of the applicant by the Patent Trial and Appeal Board or by a Federal court." 37 C.F.R. § 1.703(e). In its published responses to comments submitted during the promulgation of § 1.703(e), the USPTO explained that "[a] 'final decision in favor of applicant' is understood to include any final decision of the Board of Patent Appeals and Interferences or Federal court that reverses all of the rejections of at least one claim (without subjecting the claim to a new rejection)." Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term; Final Rule, 65 Fed. Reg. 56366-01, 56376 (Sept. 18, 2000).

## B. Procedural History

The parties agree that all relevant facts are set out in the USPTO Administrative Record ("AR") [Dkt. Nos. 10-1, 10-2]. These agreed facts establish that plaintiff filed an application to patent "power equipment with detection and reaction systems" with the USPTO on August 20,

2

2010. AR85. That application was assigned serial number 12/806,829 ("'829 Application"), and contained claims 1-11, of which claim 1 was the only independent claim. AR 193, 133-34. On September 11, 2012, the Examiner issued a Final Rejection of claims 1, 2, 5, and 9-11, finding them unpatentable as obvious under 35 U.S.C. § 103(a). AR308-314.

Plaintiff appealed the Examiner's decision to the Patent Trial and Appeal Board ("PTAB"), filing its notice of appeal on December 11, 2012. AR318. The PTAB described the appeal as involving the

> Examiner's decision rejecting ... claims 1, 2, 5, and 9-11 as unpatentable over Lokey [(]US 3,785,230, iss. Jan. 15, 1974) and Fergle (US 3,547,232, iss. Dec. 15, 1970) and claim 5 as unpatentable over Lokey, Fergle, and Yoneda (US 4,117,752, iss. Oct. 3, 1978). Claims 3, 4, and 6-8 have been withdrawn.

AR366. Because plaintiff did not present arguments supporting the patentability of claims 2, 9, and 10 apart from claim 1, the PTAB focused on claim 1 to resolve claims 2, 9, and 10, and considered claims 5 and 11 separately. AR367, 372, and 374. On August 31, 2015, the PTAB issued its Decision on Appeal of the '829 Application ("Decision"), in which it sustained the Examiner's rejection of claims 1, 2, 9, and 10 after agreeing with the Examiner's conclusion that these claims were obvious in light of the Lokey and Fergle patents, and were therefore unpatentable. AR365-66. It also affirmed the Examiner's decision that claim 5 was unpatentable as obvious in light of Lokey, Fergle, and Yoneda. AR 374.

As to claim 11, which is the subject of this litigation, the PTAB affirmed the Examiner's conclusion that claim 11 was obvious and therefore unpatentable in light of the Lokey and Fergle patents, but rejected how the Examiner reached that conclusion:

> "We agree with Appellant that the Examiner's modification is not a mere substitution, as it would require further modification to Lokey's embodiment of Figures 7-9, as modified by Fergle ... Therefore, the Examiner has not made the initial factual findings required to demonstrate a prima facie case of obviousness of claim 11."

3

AR373. Nevertheless, the PTAB found that other aspects of Lokey, specifically that its embodiment of Figures 7-9 included a "pivotable component, as called for by claim 11," supported a conclusion that claim 11 was obvious and therefore unpatentable. AR374. As a result of this conclusion, the PTAB sustained "the rejection of claim 11 over the combined teachings of Lokey and Fergle." Id. The PTAB denominated its affirmance of the Examiner's rejection of claim 11 as a "new ground of rejection" pursuant to 37 C.F.R. § 41.50(b) because the PTAB's "analysis relie[d] upon facts and reasoning that the Examiner did not use." Id.

After the PTAB's decision, plaintiff had "two options with respect to the new ground of rejection to avoid termination of the appeal as to the rejected claim[ ]": it could reopen prosecution by amending the claim, or it could request a rehearing by the PTAB on the same record. 37 C.F.R. § 41.50(b). Plaintiff chose to "amend[ ] claim 11 to overcome the new ground of rejection." [Dkt. No. 17] at 7.[1] After nearly a year of various redrafting, rejections, and office actions, on July 18, 2016, the Examiner sent a Notice of Allowance for the amended claim 11, as well as for new claims 12-17. AR 683. After another round of amendments and cancellations requested by plaintiff, AR696-704, the '829 Application finally issued as U.S. Patent Number 9,522,476 ("'476 Patent") on December 20, 2016.

The '476 Patent was initially granted a patent term adjustment of 193 days, AR745, which consisted of 78 days for USPTO delay under 35 U.S.C. § 154(b)(1)(A) and 218 days under § 154(b)(1)(B), reduced by 9 days of overlap and 94 days attributable to applicant delay. AR746. On February 13, 2017, plaintiff filed an Application for Patent Term Adjustment that requested an additional 841 days for § 154(b)(1)(C)(iii) delay ("subsection (C)(iii) delay"), based

---

[1] Plaintiff's request for a rehearing of the decision as to claims 1, 2, 5, 9, and 10 was denied. AR650-55. Plaintiff ultimately canceled claims 1-10 of the '829 Application. AR674.

4

on the time that the '829 Application was pending for review before the PTAB. AR746-50. In a Redetermination of Patent Term Adjustment, the USPTO denied plaintiff's request for the additional adjustment. AR769-70 (citing 65 Fed. Reg. at 56376). Plaintiff filed a Renewed Application for Patent Term Adjustment, asking the USPTO either to reconsider its decision or issue a Director's Decision to enable plaintiff to seek judicial review. AR771-78. On March 25, 2019, the USPTO denied plaintiff's request for reconsideration ("Director's Decision"), this time in the form of a final order permitting plaintiff to seek judicial review under 35 U.S.C. § 154(b)(4). AR791-95. The Director's Decision found that:

> The statutory requirements relating to Office Delay for Appeal time do not, therefore, include the scenario where the claim remains under rejection after the Board decision as is the case in the case at issue. In those situations, the patent only issues after further prosecution has occurred including in this case an amendment to the claim after the new ground was introduced in the Patent Trial and Appeal Board decision. Accordingly, the claim was not issued under a decision in the review reversing an adverse determination of patentability. Claim 11 was only issued after it was amended and only as a result of further prosecution of the application before the examiner. ... Thus, if the petitioner believed the new grounds was [sic] not appropriate and sought to obtain term adjustment for the period of appellate review, petitioner may have requested reconsideration of the new grounds of rejection. Petitioner in this case opted to have additional prosecution of an amended claim before the examiner and obtained a patent for the amended claim. Making that choice resulted in the loss of term adjustment for the period of appellate review.

AR793-94.

Plaintiff then brought this action challenging the USPTO's denial of its request for an 841-day increase in the term for the '476 Patent. Specifically, in Count 1 plaintiff alleges that the USPTO erroneously interpreted 35 U.S.C. § 154(b)(1)(C)(iii), and in Count 2 plaintiff alleges that the USPTO's decision was arbitrary and capricious in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 et seq.

5

II. DISCUSSION

Plaintiff acknowledges that its patent term claim depends on a "pure legal determination," [Dkt. No. 17] at 9, and both parties recognize that the issue central to their dispute is whether the USPTO correctly decided under 35 U.S.C. § 154(b)(1)(C)(iii) that plaintiff's patent was not entitled to an additional term adjustment based on the time the '829 Application was under review before the PTAB.

A. **Standard of Review**

The Federal Circuit "review[s] a district court's grant of summary judgment under the law of the regional circuit." Intra-Cellular Therapies, Inc. v. Iancu, 938 F.3d 1371, 1379 (Fed. Cir. 2019). In the Fourth Circuit, summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." Norfolk S. Ry. Co. v. City of Alexandria, 608 F.3d 150, 156 (4th Cir. 2010) (quoting Fed. R. Civ. P. 56). Where there are cross-motions for summary judgment, a court "consider[s] and rule[s] upon each party's motion separately to determine whether summary judgment is appropriate as to each." Monumental Paving & Excavating, Inc. v. Penn. Mfrs. Ass'n Ins. Co., 176 F.3d 794, 797 (4th Cir. 1999).

Under the APA, a court should set aside agency actions and findings only if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); see also Intra-Cellular, 938 F.3d at 1379. Patent term adjustment determinations are specifically subject to the APA's standard of review. 35 U.S.C. § 154(b)(4)(A) (declaring that "Chapter 7 of title 5 shall apply" to requests for reconsideration of patent term adjustment determinations). Accordingly, the Court agrees with defendant's argument that Count 1 (alleging a violation of 35 U.S.C. § 154) and Count 2 (alleging a violation of 5 U.S.C. § 702 et seq.) of

6

plaintiff's Complaint are "coterminous," and will address them together. See [Dkt. No. 20] at 22; [Dkt. No. 1] at ¶¶ 25-31; 32-38.

### B. Analysis

#### 1. The Statute

Plaintiff argues that "the PTO's interpretation and application of 35 U.S.C. § 154(b)(1)(C) is incorrect because it adds a new requirement to the statute, namely that a decision in the review reversing an adverse determination of patentability does not subject the claim at issue to a new rejection." [Dkt. No. 17] at 3. In other words, plaintiff appears to be arguing that by subjecting claim 11 to a new ground of rejection, the PTAB necessarily reversed an adverse determination of patentability.

When litigation focuses on a question of statutory interpretation, a court must look first to the text of the statute at issue. "When we find the terms of a statute unambiguous, judicial inquiry is complete, except in 'rare and exceptional circumstances.'" Rubin v. United States, 449 U.S. 424, 430 (1981) (quoting TVA v. Hill, 437 U.S. 153, 187 n. 33 (1978)). A patent term adjustment under § 154(b)(1)(C)(iii) is appropriate if the "patent was issued under a decision in the [PTAB or federal court] reversing an adverse determination of patentability." This unambiguous language imposes two requirements: that an adverse determination of patentability be reversed, and that the application reviewed in that appeal issue as a patent as a result of that reversal. Because neither of those requirements is met in plaintiff's case, plaintiff fails to establish that defendant's decision denying the patent term extension either violated the plain text of the statute or was arbitrary or capricious.

As defendant correctly argues, the PTAB's Decision did not "revers[e] an adverse determination of patentability"; instead, it "affirm[ed]" the Examiner's decision that none of the claims under review were patentable. The only difference between the affirmance of the

Examiner's decision as to claims 1, 2, 5, 9, and 10 and claim 11 is that the PTAB found a different basis, within the same references cited by the Examiner, for rejecting claim 11. AR372-73. Plaintiff's position is that a "reversal" and a "new ground for rejection" are "distinct actions," [Dkt. No. 17] at 11, and that when the PTAB entered new grounds for rejection of claim 11, it necessarily reversed the Examiner's rejection of claim 11 as obvious. That argument distorts how the PTAB described its disposition of claim 11: the PTAB unambiguously announced that "[f]or the reasons discussed above, we denominate our <u>affirmance</u> of the rejection of claim 11 as a new ground of rejection." AR374 (emphasis added). Plaintiff's argument that a new ground of rejection must act as a reversal is not based on the plain text of the statute, but on the USPTO's responses in the Federal Register, in which it explained how (C)(iii) delay is determined. [Dkt. No. 17] at 11. Specifically, plaintiff relies on the third of four examples in the USPTO's response to comments, in which it explained: "If claims 1 and 2 are pending, claims 1 and 2 stand rejected under 35 U.S.C. 102, the rejection of claims 1 and 2 under 35 U.S.C. 102 is reversed, and the decision by [PTAB] enters a new ground of rejection." Id.; Changes to Implement Patent Term Adjustment Under Twenty-Year Patent Term; Final Rule, 65 Fed. Reg. 56366-01, 56370 (Sept. 18, 2000).

Plaintiff's reliance on this comment fails for multiple reasons. First, plaintiff's argument does not quote the entire comment, which goes on to explain that where "a patent is issued as a result of further prosecution before the examiner, the patent was not issued under a decision in the review reversing an adverse determination of patentability." 65 Fed. Reg. at 56370. Second and more importantly, plaintiff ignores the rest of the phrase as it appears in the plain text of the statute itself: "reversing <u>an adverse determination of patentability</u>." § 154(b)(1)(C)(iii). The Examiner found that claim 11 was not patentable, and the PTAB's Decision affirmed that

conclusion, meaning that the determination that claim 11 was not patentable—rather than the basis for finding claim 11 unpatentable—was never changed.

In addition to requiring that the Examiner's patentability determination be reversed for subsection (C)(iii) delay to be available, the statute also requires that a "patent was issued under [the PTAB's] decision." § 154(b)(1)(C)(iii). Plaintiff's case also fails to meet that statutory requirement. After the PTAB affirmed the Examiner's non-patentability conclusion, plaintiff chose not to contest the new ground for rejection; instead, it exercised its option to reopen prosecution, and amended its original claim 11. AR377. The Examiner rejected the amended claim 11 as unpatentable. AR392. Rather than appeal that decision, plaintiff amended claim 11 for a second time, and then requested continued examination of that twice-amended claim. AR493; AR584. In March of 2016, the twice-revised claim 11 was finally determined to be in allowable form, AR649; however, it underwent still further amendment at plaintiff's request. See, e.g., AR674. When the '476 Patent finally issued in December of 2016, more than a year and numerous administrative actions had passed since the PTAB issued its Decision on August 31, 2015. Despite this extensive post-decision activity, plaintiff argues that because the back-and-forth of amendment and examination that followed the PTAB's decision eventually resulted in the '476 Patent being issued, that patent "issued under" the PTAB's decision. [Dkt. No. 23] at 7 (urging that "issue under" includes any action that is "below, beneath, or in accordance with"). Plaintiff offers no legal authority to support this expansive interpretation, which would essentially substitute "after" for "under"—a substitution that is not supported by the statute's text.

Plaintiff argues that defendant's requirement that a patent must issue as a direct result of the PTAB decision for § 154(b)(1)(C)(iii) to apply is "completely arbitrary," because whether a

patent term adjustment is warranted depends on whether the "PTO would deem ... [an] outcome 'successful.'" [Dkt. No. 23] at 10. To the contrary, the requirement that a term adjustment only be available for a patent which "issued under" the PTAB's Decision creates the brightest of lines for the USPTO to follow: it need only ask whether, as a result of a PTAB decision, the applicant had patentable material or not. As this litigation shows, the '829 Application did not have any patentable claims after the PTAB issued its decision. The options plaintiff had then were to redraft the '829 Application (which it did) or appeal the PTAB's decision. Without significant redrafting of the application, the '476 Patent would not have issued. Although that patent issued temporally after the PTAB's Decision, it did not issue under the Decision, nor even as a result of the Decision. Instead, it issued after extensive further prosecution.

Section 154(b)(1)(C)(iii) requires a term adjustment only where a PTAB decision "revers[ed] an adverse determination of patentability" and a "patent was issued under" that decision. As neither condition was met in this case, the USPTO's rejection of an additional term adjustment comports with the plain text of the statute, and was neither arbitrary nor capricious.

    2. <u>The USPTO Regulations</u>

This conclusion is supported by a formal rule issued by the USPTO which provides that patent term extension for subsection (C)(iii) delay is only available following "a final decision in favor of the applicant." 37 C.F.R. § 1.703(e). The PTAB's Decision was not a final decision in favor of plaintiff on any of plaintiff's claims. The record clearly shows that the Decision was a final decision not in favor of plaintiff as to claims 1, 2, 5, 9, and 10, and a non-final decision not in plaintiff's favor as to claim 11, for which plaintiff retained the option either to reopen prosecution by "submit[ing] an appropriate amendment of the claim[ ] so rejected," or to request rehearing. 37 C.F.R. § 41.50(b).

Plaintiff tries to avoid the impact of this regulation by citing Merck & Co. v. Kessler to support its argument that this regulation is not entitled to Chevron deference. [Dkt. No. 17] at 10; 80 F.3d 1543, 1549-50 (Fed. Cir. 1996). Merck held that Chevron deference was not appropriate for substantive rulemaking, id. at 1550; however, a regulation like this one that "merely clarifies or explains existing law or regulations is 'interpretative.'" Cooper Techs. Co. v. Dudas, 536 F.3d 1330, 1336 (Fed. Cir. 2008) (citation omitted). The Federal Circuit has consistently reviewed the USPTO's decisions about patent term adjustments using the Chevron framework. See Intra-Cellular, 938 F.3d at 1379; Supernus Pharm., Inc. v. Iancu, 913 F.3d 1351, 1356 (Fed. Cir. 2019); Gilead Scis., Inc. v. Lee, 778 F.3d 1341, 1346 (Fed. Cir. 2015).

Under the Chevron framework, a court first asks "whether Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 842 (1984). As discussed above, Congress specifically required that to warrant a term adjustment for a patent which issues after a PTAB decision, the PTAB decision must have reversed a finding of nonpatentability. In other words, the decision must have been, to quote the regulation, "a final decision in favor of the applicant." That language simply re-states Congress's conditions for adjustment. 37 C.F.R. § 1.703(e).

If the matter were not resolved at this first step, the USPTO's regulation that patent term adjustment is only appropriate after a "final decision in favor of the applicant" would certainly survive the second step of the Chevron analysis, in which a court must ask whether the agency's interpretation is "based on a permissible construction of the statute." Chevron, 467 U.S. at 843. At this second step, the agency's interpretation survives as long as it is a "reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed most reasonable by the courts." Entergy Corp. v. Riverkeeper, Inc., 556

11

U.S. 208, 218 (2009) (emphasis in original). There is certainly no contradiction between the statutory requirement that "a patent [be] issued under" the PTAB decision and the agency's interpretation that such an outcome would require a "final decision in favor of the applicant." That interpretation is particularly reasonable in light of the purpose of § 154(b). As plaintiff acknowledges, patent term adjustments are designed to avoid reductions to the term of a patent that result from delays that are "not the fault of the applicant." [Dkt. No. 17] at 12 n.3; [Dkt. No. 24] at 2. Before the PTAB reached its Decision, all of the '829 Application's claims, including claim 11, had been found unpatentable as obvious; after the PTAB issued its Decision, all of the claims, including claim 11, were still unpatentable as obvious. The substitution of a new ground for finding Claim 11 obvious did not shift the fault for the defects in claim 11 from the plaintiff to the USPTO. Therefore, the USPTO's regulation interpreting § 154(b)(1)(C)(iii) is appropriate, and the USPTO's decision denying plaintiff's request for the patent term adjustment is consistent with both the statute and the regulation.

3. The USPTO Response to Comments

Finally, the plain language of § 154 and the USPTO's formal interpretive rule are consistent with the USPTO's published responses to comments on its formal rulemaking. In response to a comment questioning which kinds of "successful appeals" warranted adjustments under § 154(b)(1)(C)(iii), the USPTO explained that a successful appeal included any decision that "reverses all of the rejections of at least one claim (without subjecting the claim to a new rejection)," 65 Fed. Reg. at 56376; in other words, an appeal would be deemed successful if it ultimately rejected the Examiner's conclusion of unpatentability and did not substitute a new ground for finding the claim unpatentable. Because the Decision on Appeal of the '829 Application clearly did not reverse the Examiner's ultimate conclusion rejecting all of the '829

Application's claims, this guidance plainly supports the USPTO's denial of plaintiff's patent term adjustment request.

Again, plaintiff tries to avoid this interpretation by arguing that the comment does not constitute formal rulemaking. Although that characterization is accurate, the USPTO's published responses to questions are entitled to Skidmore deference. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944) (holding that "rulings, interpretations and opinions" are not controlling, but should be given weight according to their "power to persuade"). Plaintiff argues against even that low level of deference, insisting that the agency's guidance is contrary to the statute. For the reasons discussed above, the Court rejects plaintiff's argument.

Under Skidmore, courts are to afford whatever weight to an informal agency interpretation is warranted considering such factors as the validity and thoroughness of its reasoning, and its consistency with prior and subsequent agency practices. 323 U.S. at 140. For the same reasons that 37 C.F.R. § 1.703(e) is a reasonable interpretation of the statute under Chevron, the USPTO's informal guidance is based on valid reasoning: if claims were unpatentable when presented to the PTAB, any delay that results from confirming that they are unpatentable is attributable to the applicant, and not to the USPTO. The thoroughness of the USPTO's reasoning is apparent on the face of the guidance, which gives detailed responses to more than fifty comments on the final rulemaking.[2] Last and most persuasive is the argument for consistency: as defendant correctly argues, Congress has amended 35 U.S.C. § 154 multiple times in the two decades during which the USPTO has been following the guidance in its

---

[2] In its opposition to defendant's Motion, plaintiff disputes the thoroughness of the USPTO guidance, arguing that the "PTO's Federal Register statements do not reflect a 'careful analysis of the statutory issue.'" [Dkt. No. 23] at 15. Plaintiff attempts to have it both ways; in its own Motion, it supported its reading of § 154(b)(1)(C)(iii) with statements from the same document. [Dkt. No. 17] at 11.

response to comments, but it has never altered or clarified the language on which the USPTO's interpretation relies. See [Dkt. No. 20] at 20; Pub. L. 107-273, 116 Stat. 1758, 1904 (Nov. 2, 2002); Pub. L. 112-29, 125 Stat. 284, 290, 316, 335 (Sept. 16, 2011); Pub. L. 112–211, 126 Stat. 1527, 1531-32 (Dec. 18, 2012); Pub. L. 112-274, 126 Stat 2456, 2457 (Jan. 14, 2013). This strongly indicates Congress's satisfaction with defendant's interpretation of the statute.

Considering the Skidmore factors, the USPTO's interpretation in its published responses to comments is one more basis that supports the USPTO's denial of a patent term adjustment.

### III. CONCLUSION

The Court finds that defendant's decision denying a patent term adjustment for the time that the '829 Application was on appeal to the PTAB was completely consistent with 35 U.S.C. § 154(b)(1)(C)(iii), 37 C.F.R. § 1.703(e), and the USPTO's published responses to comments. As such, it was neither arbitrary nor capricious. For these reasons, Plaintiff's Motion for Summary Judgment to Correct the Patent Term Adjustment for U.S. Patent 9,522,476 [Dkt. No. 16] will be denied, Defendant's Motion for Summary Judgment [Dkt. No. 19] will be granted, and judgment under Fed. R. Civ. P. 58 will be entered in favor of defendant by an Order to be issued with this Memorandum Opinion.

Entered this 26 day of October, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge